The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-2041, DynCorp International v. United States. Mr. Panner, whenever you're ready. Thank you, Judge Prost, and may it please the court. Section 15.404-1B2 and 3 of the FAR make clear that the government, in analyzing prices to ensure that they are fair and reasonable, must begin with a comparison of proposed prices, or historical prices in some cases, because normally adequate price competition establishes a fair and reasonable price. In this case, however, there's no dispute that the Army was required to, but initially did not, conduct a price reasonableness evaluation of all offerors' prices. And in the words of the trial judge, this evaluation error is particularly egregious, given that some offerors proposed prices 1 to 2,000% higher than those of the lowest price offerors. Mr. Panner, I'm sorry to interrupt, but time is short. I guess, I understand you were talking historically what the Court of Federal Claims did, but now here, what precisely are you arguing should have been done? Is it your view that the insufficient to determine that the price is fair and reasonable is what requires the contracting officer to go back to get more information from you? Tell me precisely what should have happened that didn't happen. Certainly. So what should have happened that didn't happen is that the determination had to be made that DynCorp's proposed prices were reasonable. And that had to be done pursuant to the price analysis techniques set out in 4041B2, as clarified in B3. And what that means is that what the contracting officer or what the Army had to do was to, as a first step, is to compare DynCorp's prices to those of other offerors. And had it done so, it would have been evident that DynCorp's prices were quite high. And the reason that matters is because had those prices been determined to be unreasonable, there would have had to be alerted to the fact that the prices were unreasonable, and therefore that DynCorp had a significant weakness. Indeed, the Army doesn't contest that. And therefore, that would have led to DynCorp improving its proposal. And DynCorp laid out in the appendix at 550 how it would have responded had it been alerted that its prices were too high. In fact, the discussions that it had had had suggested that there was an issue with its prices being actually too low. But in all events, what did not happen is that the Army failed to engage in the I'm sorry, Your Honor. No, I'm a little unclear on the rationality of the cost reasonableness. You're not alleging that you're staffing labor rights or other aspects of your prices were unreasonable in light of your technical approach, right? You're not saying the technical approach was unreasonable, but just that they should have concluded that all you say is the total price is Well, I think that I think, Your Honor, that what we would say is that the aspects, including the labor staffing model, that the first step should have been to recognize that DynCorp's proposal was substantially higher than those of other offers. And then there should have had there had to be a Let me ask you, I just want to get some clarification, because if the technical approach, if you come up with hypothetically a technical approach, but it's so more sophisticated than anything else, so it's going to result in a higher price. Now, the technical approach in your view is, well, the technical approach here, you've not alleged, is unreasonable. So the analysis isn't just is this higher than the others, right? Is the price unreasonable, given the technical aspects of your proposal? And why isn't that an answer to that? Yes. I think the reason that the answer to that is not, first of all, I don't think that I think the first thing to recognize, Your Honor, is that that is not a course of reasoning that the Army engaged in. The Army did not begin by saying that we have to compare these prices, and we recognize that the price that we're seeing for DynCorp is substantially higher, and let's account for that difference. Instead, there was a determination in isolation that DynCorp's approach was adequate to meet the needs of the RFP, and that the price for the proposal that was made was consistent with that proposal. But the very purpose of the Romanet I is to require the contracting officer to confront the disparity in price that existed. And I think that... This question also relates to even whether or not you have standing, whether you would have had a substantial chance of winning an award. So we would have to assume that you could revise your price proposal downward to have markedly lower prices, but there would be no adverse impact on your technical rating. Isn't that a lot of speculation at this point? I don't think so, Judge O'Malley. I mean, I think that that is exactly the remedy that this court should direct the federal... Excuse me, the Court of Federal Claims to require, because as has been laid out in the record, the labor staffing model and the labor rates that DynCorp used could be revised, and they could do so without affecting the technical merit of the proposal. There was very little difference between DynCorp and other competing... Mr. Panner, this is Judge Post. My question to you earlier was, if those parameters were not unreasonable, I guess you could change your whole proposal and completely rewrite it. But isn't the inquiry whether the price was reasonable, and isn't that predicated on whether or not it matched the needed cost for what you were proposing in terms of technical stuff? Well, Your Honor, I think that this is actually where the hypothetical that I think all the parties have used to illustrate their positions is very helpful, because... But they use different cars, which is interesting. Yes. Everyone seems to have their favorite make, but I actually am happy to embrace the government's choice, which is the Ferrari versus the Corolla. And I think it does illustrate exactly what the problem is here. If you get a proposal and it calls for a car, and a Ferrari is indeed a car, and it will indeed suffice to transport people, it would be, I think, quite arbitrary for the Army to say, well, it's a Ferrari. Ferraris cost $180,000, no problem, as opposed to saying it's actually quite unreasonable if there's not a reason that... If the RFP does not call for a car that can go 150 miles an hour, there's really no reason to propose a Ferrari. And even in the case that the intervener suggested, which was a Tesla versus a Prius, it at least would be... I think the price analysis technique at least requires confronting the disparity. And that's what did not occur here. And I actually... It's important to understand what. I mean, if you're a contractor and the Army just wants cars that run, and you make a choice that you think the Ferraris would be the best for the government, and they work faster, they have a longer life, and so you propose that. And it turns out, as one would expect, that the cost of your proposal is astronomically larger than the Ford. Does that mean that the government is supposed to tell you it was unreasonable for you to pick the Ferrari as opposed to the Ford? You shouldn't have known that yourself, that the government has to alert you to that to have further discussions about that? Is that the hypothetical here, that it was unreasonable for you to pick the Ferrari and the government should have told you that? Yes, Your Honor. With the qualification that the kind of disparity that you're talking about, so for example, if one bidder suggests a Ferrari, there would be reason to say, wait a minute, that Ferrari is really not appropriate for what we're looking for. And the price is completely unreasonable, given the technical requirements of the RFP. And again, that is what didn't occur here. I think we would really embrace the analysis of the Court of Appeals. But why is it really the place of the agency to do that? I mean, your client, as are the interveners here, is a sophisticated contractor. It's presumed to have read the requirements of the specification and know about the procurement and has experience. And if it chooses to offer the Ferrari, why should the government come in and second-guess that? I guess I'm sort of just amplifying a bit maybe what Judge Prost was asking you about. Sure. Thank you, Your Honor. I actually think there's not really a dispute that the government has to do that, in the sense that the government concedes that if... I think there's a number of points that the government concedes here. The government concedes that it was required to in the initial evaluation. It concedes that if it found the prices to be unreasonable, that it was required to engage in discussions. There's no dispute about any of those points. And so really, the only dispute is, when the government took the corrective action, following the remarks from the trial judge, did the government adequately address the problem? And our submission is that they didn't. And that is clear from the terms of the FAR, which state that in conducting the price analysis, the first step must be to engage in these price comparisons. And had the government done that... Can I get... I'm sorry, Judge Schall. Go ahead. No. This will be just quick. You're getting now, Mr. Panetta, the argument that the government did not, in your view, adequately explain why it used option little seven of the various options that you can use instead of the two preferred ones, correct? Yes, Your Honor. Although I would say that it's also... I think it also goes to the arbitrariness of the approach that the government took, given the price disparities, to fail to confront those disparities in its evaluation. Mr. Panetta, I don't want to cut into your rebuttal time, but I just have one further question, which is just generally, I really want to know what the... We've been talking this morning about 15404, and we've also got 15306, right? And that seems to indicate about how... That also seems to speak to the kind of discussions that are required of the contracting officer. Is that your read of those two? Those two kind of go together? Yes, Your Honor. But I would say that what's specifically at issue here is the question of price reasonableness analysis that was at undertaken. And again, there's no contest, there's no dispute, I should say, that if the contracting officer had determined that DynCorp's prices were unreasonable, that they would have had to engage in discussions, which did not occur. If they were to use the comparison with the other offerors, is it your view that they have to do that comparison in a vacuum and not in the context of what it was the offerors were pricing? No, I wouldn't say that, Your Honor. What I would say is that what's clear is that the contracting officer must confront and explain that disparity. And that's really what did not occur here because, I mean, by the terms of what the contracting officer said and the corrective action, it was using... It essentially went in two steps. It said the technical team has said that the technical approach satisfies the proposal, and I've gotten information about costs and it lines up, and therefore that satisfies price reasonableness. And what's missing is... Basically, you would want... I'm sorry. You would want the contracting officer to basically help you do a whole new proposal? I wouldn't put it... I mean, discussions are for the purpose of alerting the bidder to weaknesses in the proposal so that they can improve them. And that benefits the public because the public then gets the benefit of better prices and better proposals. And again, there's really... The government does not contest that had it recognized that DynCorp's pricing was unreasonable, that it would have had to alert DynCorp and give it an opportunity to improve its proposal. But again, Mr. Frost, I just... It's not clear to me why you're not saying that it would have had to determine that the technical aspects of DynCorp's proposal were unreasonable. If the price was reasonable in terms of the technical aspects of the proposal, then it's just... Then necessarily, if they're saying the price is too high and unreasonable, it's because you either had too much in your technical aspects or didn't need them or something like that, right? Is that what you're saying? Yeah. I don't want to fight you too hard on that, Your Honor, because I think that you have a fair point, which is to say that it is correct that the price is not evaluated in a vacuum, that you do need to... What we're saying had to happen is that there had to be an accounting for the disparity. There had to be an explanation in the record of why, given the comparison of prices, that DynCorp's proposal was nevertheless reasonable and that discussions were not required. And that's really what didn't occur. On the contrary, there was a recognition that DynCorp's prices were very high and substantially higher than the other offerors, and there was a deliberate decision made not to engage in those discussions. Okay. Thank you. And we'll restore to you three minutes of rebuttal. Let's hear from the government. Thank you, Your Honor. May it please the court. This is an odd-bid protest. DynCorp's allegation is not that its proposal represented the best value to the government and that the Army erroneously failed to recognize this. Rather, DynCorp alleges that the Army erred by failing to find that DynCorp's own prices were so high as to be considered unreasonable. Mr. Rayl, this is Judge Saul here. I have just one sort of preliminary question that intrigues me. What is the status of this procurement right now? Is it ongoing or is it halted or what? It is ongoing. There are different regions where task orders have been awarded. For some of those regions, the transition to LOGCAP V has been completed. Others, it's ongoing. Due to COVID, I think in at least one, it hasn't actually started yet. So it's at various stages, depending on the region. But it has, to an extent, gotten off the ground, so to speak. Yes, very much so. Okay. Thank you. So DynCorp has not demonstrated any error in the Army's final price reasonableness evaluations, nor has DynCorp demonstrated that it was prejudiced by the errors it alleges on appeal. DynCorp lost the LOGCAP V competitions because of its own business decisions, not because of any errors by the Army. So the trial court's judgment should be affirmed. Can I ask you, Mr. Rayl, about the FAR provision that we were discussing with Mr. Penner earlier? I mean, portion of the language says if the information on competitive proposed prices or previous prices is insufficient to determine the price is fair and reasonable. Insufficient suggests, does it not, like, that you have to go back and ask? I mean, can it be insufficient if you don't sort of go back to the party proposing it and ask for more information and discuss it with them? Or do you just look at the face of the numbers and say, it's insufficient, we move on to the next step? Well, if you're talking about competitive prices, then I think it would just be with the prices that were proposed. I mean, insufficient could mean that maybe that you don't have enough offers competing independently, or it could mean that there's simply a wide disparity of prices and the awardees may be at the higher end, and so you can't say strictly by adequate price competition in that particular case that the awardee's price is, in fact, fair and reasonable. Or, in this case, every price is fair and reasonable since the trial court determined that the agency had to look at every price. So that could be a situation where it's insufficient to determine that a price is fair and reasonable. In that case, it makes sense to go back to the as necessary to determine that a price is, in fact, fair and reasonable. There's lots of discussion in these memos, in the 78 memos, but I don't see any actual determination that says that they couldn't use the original methodologies, the ones that are preferred. And so I guess what I'm trying to understand is why wouldn't they just walk through the original ones and either say they answer the question or they don't? But I guess the answer to that is because the FAR provision doesn't, subsection B3 doesn't require the agency to do that. It certainly doesn't require such a determination to be documented. I mean, here it's really undisputed that the information on competitive proposed prices was, in fact, insufficient to determine that all the offerors' prices were reasonable. I mean, the agency did compare the total proposed cost plus fixed fee prices and the total proposed firm fixed prices for each region and did not determine that the offerors were fair and reasonable based on that. The cost price factor chair only determined that the lowest price offeror in each competition was fair and reasonable. So the agency was not Are you saying that the agency actually went through the first comparison of proposed prices and determined that that could not answer the question and then said it had to move on? I don't see that in any of those memos. It didn't go that far, but the agency did do a comparison of the offerors' proposed prices to each other for each of these 78 separate comparisons, and that's at Appendix 1069-866-94. And so you're saying that the Court of Federal Claims was in error when it said that they didn't do that comparison of all the proposed prices? Well, so they did the comparison. What they didn't do is find that each offeror's price was reasonable based upon that comparison. The agency didn't believe it needed to determine that every offeror's price was reasonable. It believed that it only needed to determine that the awardee's prices were reasonable in accordance with the FAR. And the Court of Federal Claims found that the solicitation required the agency to make a determination for every single offeror, and we're not contesting that particular determination on appeal. But the agency did do the comparison. It determined that there was adequate price competition, but it didn't determine that every single offeror's price was reasonable based on that adequate price competition. Ms. Durand, can I come in? Oh, go ahead. Kate, Judge O'Malley, if you want to finish, go ahead. Sorry. No, I was just going to say, in connection with that FAR provision where you say that it was not, that even though they call them preferred techniques, that you're saying they're not mandatory, but I don't really understand how you explain the however transition that is used for the second sentence. It does seem to say that they're not just preferred, but you don't get to the other analyses until after they're done. Well, I think the however fits in with the rest of the provision, which is framed in terms of permissive language. It talks about preferred techniques. It doesn't talk about mandatory techniques. And it describes a circumstance where the agency may use any of the remaining techniques. So, whether the however is in there or not, it's not taking away the discretion that's expressly granted by subsection B2 for the agency to use any of the seven techniques. To be sure, it is encouraging the agency to use the preferred techniques and giving a circumstance where it's appropriate for the agency to use one of the Well, I mean, this is Judge Proust. Let me follow up with Judge O'Malley's question, because I have the same as Justice Kagan, I think, has told us. We're all textuous now. So, we've got the however if. That language in isolation would seem to not embrace your interpretation, right? So, you need to look more globally at the context and how mays are used in FAR and how shalls are used in the FAR. Am I correct about your analysis? How do you get to the point where you say, however if then, and you're saying that you conclude that's discretionary? And I'm wondering how you can reach that based on those words by themselves. Well, the context is, of course, important. And we've laid that out that the FAR certainly knows how to use the term shall not if it wants to prohibit the agency from using a particular technique in particular circumstances. But just the context of this provision alone, if subsection B3 were in isolation and we didn't have subsection B2, and this was the sole authority for using a price analysis technique like analyzing data other than might work. But here, the FAR has expressly granted the agency the authority in B2 to use these seven price analysis techniques. And so, it takes something more than preferred and may use to remove that authority. But subsection B3 doesn't remove any authority. And is your reading that the contracting officer is not even limited to those enumerated seven techniques? Yes. That's also clear from the plain language of B2 where it says, examples of such techniques include but are not limited to the following. So yes, that's absolutely correct. So, there's been no violation of subsection B3 in this case. And the price reasonableness determinations that the agency did make were reasonable. It's undisputed that the Army was well aware that there was a wide disparity in some offerors' prices. And the Army elected to perform a detailed analysis of offerors' cost and pricing information, spanning more than 1,000 pages, and ultimately concluding that each offeror's prices were reasonable in light of their technical approach. While some offerors took more robust approaches to fulfilling some of the solicitation's requirements, that doesn't make those approaches or the resulting prices unreasonable. Counselor, before you finish, can you address the standing question? Sure. DynCorp has not demonstrated that it was prejudiced by the errors that it alleges on appeal. DynCorp's theory of prejudice is that if the agency had performed what it believes to be proper price reasonableness analyses, it would have determined that DynCorp's own prices were unreasonable and would have been required to tell DynCorp about that. And that DynCorp would have then proceeded to alter its proposal to give itself a substantial chance of winning the awards. And it simply hasn't made that demonstration on the last point. DynCorp's prices were not only substantially higher than the awardees in the six relevant regions, but DynCorp was also inferior for the significantly more important non-price factors. So, without a showing that it would have lowered its prices below an awardee in response to additional discussions, DynCorp could not demonstrate a substantial chance of winning a best value tradeoff because the awardee would have had both a lower price and a superior proposal for the non-price factors combined. In other words, there's nothing to trade off. DynCorp never provided any calculations showing how it would have lowered its prices sufficiently to beat any one of the awardees, even though it was informed of the awardee's prices before it filed its protest as part of a debriefing. It's DynCorp's burden to demonstrate a substantial chance of award, and it has not done so. And you're talking about, you're making that argument with respect to standing, not the merits, right? We've made the argument with respect to prejudice, to the extent prejudice goes to the standing to raise this particular claim, I suppose that could be a fair characterization as well. But we haven't specifically argued standing, but the prejudice determination that would have to be made if DynCorp were successful on the merits. Which, of course, it's our position that they're not successful on the merits, that the trial court was correct to grant the government judgment on the administrative record, and accordingly the court should affirm the trial court's judgment. Thank you. Thank you. Anything further? No. Thank you. Mr. Panner, we're restored three minutes of rebuttal, if you need it. Thank you very much, Judge Post. Clearly, if the panel has questions, I'd be very happy to respond. Maybe I can speak briefly to the prejudice issue. I think that with regard to that, as Mr. Rayl noted, the government hasn't contested DynCorp's standing to pursue this, didn't contest it in the Court of Federal Claims, and hasn't done so here. I do think that it would be inappropriate for that jurisdictional question to foreclose the that's required in the event that an error is determined on the merits. But in all events, as we've explained in our briefs, DynCorp did establish prejudice, and I think that this court can grant deference to the determination of the Court of Federal Claims, which really does go to this question in the initial opinion. It was actually issued contemporaneously, but in the first opinion in the appendix, the trial judge determined, based on the record, that there was a substantial chance that had discussions been pursued with respect to pricing, that there was a substantial chance that the awards would have been different, and that DynCorp did demonstrate a substantial chance with regard to that. Anything further? Unless the Court has further questions, Your Honor, thank you for the additional time. Thank you. We thank both sides, and the case is submitted. Thank you. Thank you.